Good morning, your honors. May it please the court, Janet Bateman for the petitioner-appellant David Martinez-Castillo. The trial court failed to follow Batson's three-step framework when it denied the defense Batson's motion after finding that the prosecution's stated reasons were race-neutral and without proceeding to the third step of Batson, which was its affirmative duty, to make a decision on the ultimate issue of whether purposeful discrimination was at play. Is this a magic words requirement? Because when I read through the transcript, the trial court does go through the three steps. He says there's a prima facie case based on the defendant's motion. The prosecutor gives the purported race-neutral reason, and the court says, yeah, I find that you have a valid race-neutral reason in effect. And when I read through the briefs, it was, well, there are some magic words that the trial court had to say in order to indicate completion of the third step. But I don't see that in Supreme Court cases saying there's a magic words requirement. So help me understand why the trial court didn't do enough here. JANET BATEMAN Well, your honor, the Supreme Court has stated that there is a third step, that the trial court must go beyond just the race-neutrality finding and must make a purposeful decision after a sincere and reasoned inquiry into whether purposeful discrimination was at play. JUDGE LEBEN Must I do so sua sponte? I read this record, and the trial court says, you're right, step one, the trial court says you made a prima facie case. Step two, the prosecutor offers what appear to be facially racial-neutral reasons, so he steps, and then the judge says, okay, those are racially neutral. And you're right, nobody ever offers on behalf of Mr. Castillo the argument that they're pretextual. It's the burden of the defendant, is it not, to at that point to show that the reasons are pretextual. And I don't see anything in this record, I read it pretty carefully, where trial counsel said, well, we meant it, your honor. That may sound racially neutral, but I want to do a comparative juror analysis. It all shows up in the court of appeals for the first time. Is there anything in this record where any claim of pretext was offered to the trial judge? Well, your honor, the original motion itself is a claim that the reasons were pretextual. Well, but that's the original motion I read. The original motion is, your honor, I want to make a Batson motion. Correct. So can you point me to anything in this record where at trial, trial counsel said, okay, your honor, you've completed step two, but there's another step here, and I've got evidence of pretext. No, the record does not show that. I understand the court of appeals took it up on the merits anyway, which is to say it addressed the pretext issue. Correct. But I'm now focusing on the trial court, and as Judge Ikuda was with respect to what the judge said, and you agree with me, there's nothing there other than the bare assertion of Batson. Nothing from the defense counsel themselves, but that does not absolve the trial court's affirmative duty. So you think the trial court has a sua sponte duty once it finds step two to inquire into pretext even if the defendant doesn't so argue? Yes, your honor, and that's what the Supreme Court and what this court have ruled. No, we've talked about trial courts having the obligation for searching inquiry and looking very hard at it, but I don't know that we've ever said that if the defendant is silent and doesn't make a claim of pretext, that the trial court has an obligation on its own to make findings on it. Have we ever said that? Perhaps not in those, perhaps not, but in the U.S. v. Alanis case, which was a gender discrimination case, the trial court made a ruling that the reasons provided were race neutral and were plausible. And this court found that that was not enough, that it was not enough to find that reasons were both race neutral and plausible, that the trial judge had to do more. Sure, but in that case, in that case, I'm sorry, I didn't mean to interrupt you. I think we're in the same place. In that case, as I read it, the defendant or the objecting party also said at trial, Your Honor, I've got evidence, I've got a claim of pretext. But let's assume that because the Court of Appeals treated it here, it's in front of us. What's your claim with respect to the Court of Appeals decision? First that the Court of Appeals' determination that the trial court had made a sincere and reasoned inquiry is unsupportable by the record. After the first fastened motion, the trial court simply stated the reasons are race neutral and denied the motion. But the Court of Appeals went farther. The Court of Appeals said, but now we'll listen to your reasons. There are comparative juror reasons, and we find. The Court of Appeals did not recognize that the trial court had erred in not proceeding to the third step, and found that there were reasons to support the race neutrality finding. It then did engage in some comparative analysis with respect to two of the sworn jurors. It spent a brief amount of time highlighting certain factors that the trial court might have found, or the prosecutor might have found, to be pro-prosecution. Can the Court of Appeals do that? The Court of Appeals can do that. The Court of Appeals cannot substitute its reasons for those stated by the prosecutor at trial. But what the Court of Appeals did not do, what the Court of Appeals did, did not rise to the sensitive inquiry required by the third step. So are you saying it's an unreasonable determination of the facts? The last recent decision of the state court is that California Court of Appeals opinion. So we're looking at whether that was unreasonable application of the Supreme Court case or unreasonable determination of the facts. So is your argument that the California Court of Appeals facts and determination was an unreasonable determination of the facts? My first argument would be that the California Court of Appeals decision was contrary to law and an unreasonable application of the law in the Supreme Court case. And what Supreme Court case is it contrary to? In Batson itself and in Batson's progeny, including Miller L.V. Dretke. And why was it contrary to – so you're saying it's an unreasonable application or contrary to – so a D-1 claim. Correct. And you're saying it's contrary to Miller, Batson? Yes. And what specifically would be unreasonable for the state court to have done? It completely failed to acknowledge that the state court – that the trial court had failed to engage in Batson's third step. And which case says that a state court has to determine what the trial court did, as long as the state court eventually does the Batson steps? Which case says that that's an error, a constitutional error? This court held recently, this summer, in the, excuse me, in the McDaniels v. Kirkland case, that even though – excuse me, I'm confused – the trial – the Court of Appeal in finding – the Court of Appeal did not recognize the trial court's error. And as a result, that – the Court of Appeal's decision is also contrary to law and also constitutes an unreasonable application of the law. It didn't – it never recognized the trial court's failure to engage in the third step and – But what Supreme Court case says, when we look at the appellate court's decision, we have to conclude it's an unreasonable application of Supreme Court precedent because it didn't state that the trial court made an error. So which case says that? Which Supreme Court case says that? I don't have that case, Your Honor. Well, let me – let's try it slightly differently. Let's assume the trial judge failed to engage in the third Batson step and that was inappropriate. And then there's an appeal. And the Court of Appeals says, among other things, even if he – we'll now look at the record and we determine on this record that the reasons were not pretextual. Can the Court of Appeals do that? The Court of Appeals cannot cure the trial court's error. So is it – your position is that once there's a trial court error, it's unreasonable for the Court of Appeals to do anything with step three? Is that your position? That is my position. But even – It wasn't a moment ago. Yeah, that's what I'm trying to find out. You answered the question, if the Court of Appeal engaged in the comparative analysis, can the Court of Appeal do that? You said yes. Now you're saying no. The Court of Appeal engaged in the comparative analysis in this case because the petitioner encouraged it to do so. But was it an error in doing so? Should it have remanded or should it have granted the writ because the Court of Appeal cannot engage in the comparative analysis required by the Supreme Court cases? Or is it just your position that they goofed when they did it? Can they do it? I think that they – Yes or no? Yes. Okay. They can do it. Can do it. Then your position must be that they somehow engaged in an unreasonable determination of fact when they found that the reasons were nonprotectual. Is that your position? That is my position. But it's more than just that the error of the Court of Appeal that no reasonable jurist could agree that – could find – I'm agreeing with you. See, I'm trying to focus on the second half of what the Court of Appeals did. I agree with you if the Court of Appeals said it's perfectly okay not to do step three, that that's wrong for a purpose. So – but the Court of Appeals said, but even if we're wrong about that, we'll do step three. Okay. And now having done it, we find that there was no error because the reasons given were not pretextual. And you say the Court of Appeals can do that step three. You just answered – told Judge Bay that. Yes, yes. Two out of three. Yeah, right. But that when you get to step three, it made a mistake. What was its mistake? Its mistake is that the trial court did not engage in any analysis. And when the trial – on the record, and when that record is silent, we can presume that it didn't engage in any. We can also look at the other direct and circumstantial evidence in the record of that discrimination, including the prosecution's failure to engage in any questioning with any of the structures on the allegedly objectionable factors. We can also look at the comparative analysis, which shows that sworn jurors had the same characteristics as those deemed objectionable by the prosecutor in the structures, including in particular Yolanda Torres, whose only objection that the prosecutor stated was that she had had – that her father had been arrested. The record is silent as to what that arrest was for, whether it resulted in a conviction, and whether Ms. Torres believed that the criminal justice system had worked in her father's case. With Judge May's permission, can I ask you just one more? What Supreme Court case do you rely on for the proposition that the comparative juror analysis done by the court of appeal, but I suppose even if it were done by the trial court, what Supreme Court case do you rely on for that this was inappropriate? Miller L. Your Honor. Thank you. All right. Thank you very much. I'm sorry we took you past your time. Thank you, Your Honor. Morning, Your Honors. Jeff Grant for Appellee. I'm first turning to the first issue of whether the trial court in fact did reach the third step of the Batson inquiry. My argument is that the record shows that the trial court didn't reach that third step. Did or did not? Did reach that third step. Tell me where in the record I can find a trial judge saying I find these are nonpretextual reasons. I can find several places where he said those are racially nondiscriminatory reasons. And I think I find a place where he could say, where he said right after that, let's move on. But I can't find any place where he says I find, and I find they were not pretextual. Can you point to the record? Your Honor, the best example of this would be his comments in regards to Mr. Torres and Ms. Little. In regards to Mr. Torres, he said, yes, that was real clear that the Pempery strike was not based on race. The fact that he had two brothers that were involved in gangs, clearly any prosecutor would not leave them on the jury. Can you help me with, obviously the court didn't say, I find this reason to be not pretextual, which would be the magic words, I guess, for the third step of Batson. What's the state of the case law, Supreme Court case law, or ours interpreting it, which says you need to have those sorts of magic words at the third step? Can you just give me a brief summary of that? There is no magic word requirement, Your Honor. The requirement is that the trial court engage in a sensitive factual inquiry. The requirement is not that the trial court place that inquiry on the record. And in fact, in the state of California law, a trial court is not required to make explicit and detailed factual findings for the record in every instance. Mr. Grant, you were quoting some words of the trial judge with respect to Ms. Torres. Mr. Torres, Your Honor. Mr. Torres, I'm sorry. Could you give me the citation to that? Yes, Your Honor. That would be excerpt of record, the second volume, page 208. And further answering your question, Your Honor, there are – Well, let's look at that. Okay. As to juror Raymond Torres, he said he had two brothers serving prison, and the judge says, yeah, that was real clear to me that wasn't based on race, the fact. So – and that's – I think that that's a – that's pretty clear. But as to other folks, he simply says the court finds that the prosecutor has race-neutral reasons for excluding those particular jurors. And I'm looking at 155, I think, of your excerpts of record, and that has to do with Sierra, Anaya, Gutierrez. Does the judge have to do more than that? No, Your Honor, especially given the fact that it is evident that he did reach the third step with Mr. Torres and Mr. Little. It is presumed that a state court knows and follows the law, and given that the state court in this case is, in fact, reaching and completing the third step of inquiry with two jurors, and there's no indication to the contrary that he did not. So we presume, even if he didn't, as to the other six, that he did because he reached it as to two? Yes, Your Honor. So he – When he recognizes race-neutral reasons being stated, his recitation that they're race-neutral has a double effect. One, it fits Step 2 because he's – they're race-neutral reasons, and it fits Step 3 because he accepts them by some implication? Well, he – Is that your position? My implication is that the fact that he denied the motion shows that he necessarily reached the third step and found the race-neutral. But on some presumption that he's following the law. Yes, Your Honor. So if he'd done nothing? I think there's more than a presumption, right? In the first one, he says, it's clear to the court that wasn't based on race. This is for Mr. Torres. And as you point out from Ms. Little, he says, I don't think there's any prosecutor that's going to leave her on the jury panel suggesting objectively neutral reason, any prosecutor. And for B, he says that I, the court – meaning the court – I find a race-neutral reason to exclude her also, meaning, you know, the neutral judge is saying objectively there's a race-neutral reason to exclude her. So it does seem like he's addressing the objective standard that it's not pretext, it wasn't done for a discriminatory reason. And I guess I'm concerned about why that isn't enough to meet that standard. What more should the court have said in that context? Your Honor, my position is that the court didn't need to say anything more in this context. That this is enough to have completed the Batson inquiry as required by Batson and its progeny. What's the best case to say that this is enough? Your Honor, the best case is simply all of Batson and its progeny that do not make an explicit holding that the trial court must place its findings on the record. But doesn't Batson and its progeny, and your opponent quoted at least part of his And a race-neutral reason is necessary but not sufficient because it could be pretextual. If I challenge everybody in the jury whose family have convictions that are Hispanic but not any of the Anglos whose families have convictions, it's a race-neutral reason but it might well be pretextual. Doesn't Batson really require that the judge make sure that the race-neutral excuse is not pretextual? Yes, Your Honor. And where does the judge say that here? He says that when he, in regards to Mr. Torres and Miss Little. And additionally, Your Honor. Well, he says no prosecutor would have failed to excuse those people. And one of my problems, of course, is the defense never says they're pretextual. So the judge may not have had the opportunity. But doesn't he have to go on and say, at least with respect to the first six, that I find this wasn't pretextual. There are good reasons, he says, that you challenge these people. Now the defense should have an opportunity to show pretext, shouldn't it? It's the defendant's burden to prove this. And did the judge give them an opportunity to show pretext? He certainly did not preclude them from. He said court finds a prosecutor has race-neutral reasons for excluding those particular jurors. I'm going to deny the motion at this time. We're moving kind of slow, gentlemen. Let's move along. So if he denies it, you had said earlier, if the district court denies the motion, then that indicates a determination that it's not prejudicial, even if or not pretextual, even if he doesn't make a record of his finding. Yes, Your Honor. And so there's no case that says that either, I assume. There's no case that says that is enough. Okay. There is no case that says you need to do more. And we're looking for clearly established law. And since we do not have clearly established law requiring the trial court to do more than it did, there was no unreasonable application of clearly established law in this case. Further, turning to, if you no longer have further questions on the first issue, and turning to the second issue, the State court's decision that substantial evidence supported the trial court's ruling was not unreasonable in this case, given the record that we have. But can a court of appeal ever determine the issue of pretext without a pretext? Without having demeanor evidence before him? Before them? Your Honor, the court has the Voidire record, and the record before it makes that decision. It's true. But if we go to cases such as Rice v. Collins, where we give a great deal of deference to the trial court in observing the demeanor of the prosecutor when he makes the explanation of the temporary challenges, isn't that missing in the cold record? It is missing in the cold record, Your Honor. Now, do we have a case that says it is perfectly okay for the court of appeals to conduct the Batson third step if the trial court doesn't? Off the top of my head, I am not aware of a case, Your Honor. Neither am I. Either way, there's not a case that says the court of appeals can't either, is there? Not that I'm aware of, Your Honor. And I've read many cases where the court of appeal does, in fact, engage in determining whether the third step was properly completed by the trial court. Not, in fact, whether the trial court said enough. Right. I'm assuming for purposes of this question that your opponent is right, that the trial court simply failed to do the third step, that the mere denial is not enough. I understand. But if the trial court failed to do the third step, let's assume it said to the defendant, sorry, I'm not going to listen to your arguments about pretext. Could the court of appeals in the first instance then say, well, now we'll listen to him and we'll reject him? Your Honor, here we are looking at the last reasoned decision of the state courts, and the state court here did, in fact, determine that the third step was completed. And for purposes of argument here, we do look to the state court of appeal. And so, in fact, it did reach that third step, and that is the decision that we would make. All right. I guess what we're going to do. There's no Supreme Court case saying that we can't look at that. Not that I'm aware of, Your Honor, no. And just briefly, Your Honors, in looking at the actual record of purposeful discrimination in this case, one, the victims and prosecution witnesses based on surnames from the record were Hispanic, and this would tend to undercut the prosecutor's motive for excusing Hispanic jurors. And secondly, a comparative juror analysis reveals that the seated jurors, the four seated jurors identified by appellant, were not truly consistent with the excused jurors. Juror number 801 said blatantly pro-prosecution statements, as detailed in the record. Juror number 803, I'm just using the first three numbers, she was the victim of a crime, which distinguished her greatly from any of the other excused jurors. Juror number 904 had a niece that worked in the court and a son-in-law who was a police officer, which distinguished her. And juror number 892, he had a 35-year-old DUI, which certainly wouldn't have given any reasonable prosecutor much pleasure. We've taken you past your time. Thank you very much, Mr. Grant. Thank you, Your Honor. The case of Castillo v. Gibson will be submitted.
judges: BEA, IKUTA, HURWITZ